[Cite as *Deitz v. Shelby Cty. Pros. Office*, 2025-Ohio-2881.]

**IN THE COURT OF CLAIMS OF OHIO**

| | |
|---|---|
| PAUL LEONIDAS DEITZ | Case No. 2025-00339PQ |
| Requester | Special Master Todd Marti |
| v. | <u>REPORT AND RECOMMENDATION</u> |
| SHELBY COUNTY PROSECUTOR OFFICE, et al. | |
| Respondents | |

{¶1} This case is before me for a R.C. 2743.75(F) report and recommendation. I recommend that the court (1) order the respondents to produce unredacted copies of the records filed for in camera review, (2) find that respondents unreasonably delayed their response to requester's November 9, 2025 records request, (3) order respondents to reimburse requester for his filing fee and the other costs he incurred in connection with this case, (4) order respondents to pay the balance of the costs of this case, and (3) deny all other relief.

**I. Analysis**.

{¶2} Respondent Sidney-Shelby County Health Department (the "Department") acted against the requester Paul Deitz in connection with a barn it contends was illegally built on his property. The Department was represented by the Shelby County Prosecutor's Office (the "Prosecutor") in that enforcement action. The dispute escalated to a civil suit between Mr. Deitz and the respondents in the Shelby County Court of Common Pleas.

{¶3} Mr. Deitz made several public records requests to the respondents. The Prosecutor responded to all the requests, either as counsel for the Department or on its own behalf. The respondents produced some records, withheld other records as exempt from the Public Records Act, and denied the existence of additional responsive records.

{¶4} Mr. Deitz disputes those responses and filed this case. He seeks to compel the production of additional records, a finding that the respondents unreasonably delayed their response to one of his requests, damages, and unspecified relief for what he alleges is a general pattern of disregard for the Public Records Act. Mediation did not resolve the case, so a schedule was set for respondents to file responsive records for in camera review and for all parties to file evidence and memoranda supporting their positions. That schedule has run its course, making this case ripe for decision. *Complaint*, filed April 7, 2025; *Order Terminating Mediation*, entered June 18, 2025.

## II. Analysis.

### A. Production claims.

{¶5} Mr. Dietz seeks production of five groups of records. Each group will be discussed separately.

#### 1. September 17, 2024, records.

{¶6} Emily Mothmiller, an assistant prosecutor, met with Ted Wuebker, a Department official, sometime between noon and 3:17 p.m. on September 17, 2024. Mr. Dietz made several requests for sets of materials he believes document the substance of that meeting. Respondents produced some records in response to those requests, but Mr. Deitz claims that they failed to produce several types of records: call logs, meeting records, communications, and other unspecified records. Respondents assert that they have produced all records responsive to these requests except for some documents they claim are security records. Respondents deny that they have the other records just described. *Evidence Filing of Requester Paul Leonidas Deitz*, filed July 2, 2025, ("*Requester's Evidence*"), pp. 4, 5, 6 Violations 1, 5, and 6; *Respondents' Response to Complaint*, filed July 15, 2025, ("*MTD*"), pp. 1, 2.[1]

---

[1] Mr. Deitz detailed his claims by identifying nine violations in his evidentiary filing. Respondents adopted that approach by responding to those alleged violations in the manner Mr. Dietz identified them. I follow that approach as well. All references to specific pages of Requester's Evidence and the MTD are to the pages of the PDF copies posted on the court's docket.

{¶7} *Additional Records*. A requester has the burden of proving that additional responsive records exist if the respondent asserts that it has produced all responsive records. A requester need only provide "some evidence" of the existence of additional records if the respondent does not support its assertion with sworn evidence. *Sell v. Trumbull Cty. Juv. Div.*, 2024-Ohio-6139, ¶ 6 (Ct. of Cl.).

{¶8} These respondents have not provided sworn evidence supporting their assertion that they produced all records responsive to these requests. Mr. Deitz consequently must come forward with some evidence that respondents do indeed have the records he seeks.

{¶9} He has not done so. Although he has proven that the September 27 meeting occurred, he has come forward with nothing establishing that it resulted in the types of records listed above. He has failed to meet his burden of proof regarding these claims.

{¶10} *Security records*. Respondents filed two records for in camera review that they acknowledge are responsive to these requests, but were withheld as R.C. 149.433(A)(1) security records. *Respondent's Records Filing Under Seal*, filed July 3, 2025, S:\PUBLIC RECORDS REQUEST\Secure\2025-00339 ("*In Camera Records*"). Those records are indeed responsive to this request; they concern the September 17 meeting. They should be released because respondents did not meet their burden of proving that those records are exempt from the Public Records Act.

{¶11} A public office asserting an exemption from its general duty to provide access to public records bears "the burden. . .  to . . .  prove facts clearly establishing the applicability of the exemption." *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-Ohio-5371, ¶ 27. See also, *Id*. at ¶¶ 35, 54. That burden must be carried with "competent, admissible evidence[.]" *Id*. at ¶¶ 53, 77. "Unsupported conclusory statements in an affidavit are insufficient." *Id*. at 35. Courts determine whether an office has met that burden by conducting "an individualized scrutiny of the records in question." *Id*. at ¶ 29. That usually requires in camera review of the disputed records. *State ex rel. Natl. Broadcasting Co. v. City of Cleveland*, 38 Ohio St.3d 79, 85 (1988). The public office must produce extrinsic evidence if the applicability of the exemption is "not obviously apparent and manifest just from the content of the record itself[.]" *Welsh-Huggins*, 2020-Ohio-5371, ¶ 35. See also *id*. at ¶¶ 30, 50, 53. Further, an office invoking the R.C. 149.433's security

records exemption must "explain[] how the content of [the record] contains information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage." *Id*. ¶ 47. See also *id*. at ¶¶ 55, 59.

{¶12} The first record is an entry on Mr. Wuebker's time sheet for September 17, 2024. It shows that he met with Ms. Mothmiller that day. *In Camera Records*, p. 4. The security implications of that cryptic entry are not obvious, and respondents have neither explained those implications nor provided evidence on the point. They have therefore failed to meet their burden of proof regarding this record.

{¶13} The second record is a September 17 email exchange between various employees of the respondents advising that Mr. Deitz might appear at their offices and instructing them to contact security officials if he did. *In Camera Records*, pp. 6-9.

{¶14} I recommend that the court reject respondent's invocation of R.C. 149.433 regarding these emails because they have not produced sufficient evidence that Mr. Deitz was a threat. The courts uphold the application of R.C. 149.433(a) when the danger resulting from the release of the record is obvious, *McDougald v. Greene*, 2020-Ohio-4268, ¶¶ 10, 13, or there is robust evidence of "direct" or "verified" threats. *State ex rel. Ohio Republican Party v. Fitzgerald*, 2015-Ohio-5056, ¶¶ 23, 24. In the later situation, the Supreme Court has relied on affidavits from officials with security expertise to find such threats. *Fitzgerald*, 2015-Ohio-5056, ¶¶ 10, 11; *State ex rel. Plunderbund Media, L.L.C. v. Born*, 2014-Ohio-3679, ¶¶ 11, 23-27; *State ex rel. Enquirer v. Wilson*, 2024-Ohio-182, ¶¶ 18-23. There is nothing approaching that type of evidence here.

{¶15} There is no evidence that Mr. Deitz engaged in threatening behavior. The mere fact that he vigorously asserted his rights in a dispute with the government did not, by itself, make him an obvious threat. Indeed, any suggestion vigorously asserting one's rights makes one a threat would be antithetical to the rights of free speech and to petition for the redress of grievance; something more is needed.

{¶16} The only evidence suggesting the type of threat sufficient to trigger R.C 149.433 is an unsworn email from a person with no obvious security expertise. Moreover, that email identified no threatening conduct. That falls well short of what was found sufficient in *Plunderbund*, *Fitzgerald*, and *Wilson*. Respondents have therefore failed to meet their burden of proving that the emails fit squarely within R.C. 149.433.

{¶17} I therefore recommend that the court order respondents to produce unredacted copies of the records filed in the *In Camera Records*, but to otherwise deny relief on the claims based on these requests.

### 2. Zimmerman records.

{¶18} Mr. Deitz requested certain records specific to William Zimmerman, the Shelby County Prosecutor. The Prosecutor produced some records in response to this request, but Mr. Deitz claims that the response did not include several types of records he believes exist: communications between Messrs. Zimmerman and Wuebker, secretarial records, timekeeping, billing, case logs, financial records, and contracts. The prosecutor denies that such records exist. *Requester's Evidence*, p. 5, Violation 4; *MTD*, p. 2.

{¶19} Respondents did not support their denial with sworn testimony, so Mr. Deitz was only required to produce some evidence to sustain this claim. He has produced no evidence showing the existence of those records.

{¶20} I therefore recommend that the court grant no relief on the claim related to the request to Mr. Zimmerman.

### 3. Wuebker-Lloyd records.

{¶21} Mr. Dietz requested records related to communications between Mr. Wuebker and James Lloyd. The Department, through the Prosecutor, produced some records, but Mr. Deitz contends that additional, unspecified, responsive records exist. The Department denies that additional responsive records exist. *Requester's Evidence*, p. 6, Violation 7; *MTD*, pp. 2-3.

{¶22} Respondents did not support their denial with sworn testimony, so Mr. Deitz was only required to produce some evidence to sustain this claim. He has produced no evidence showing the existence of those records.

{¶23} I therefore recommend that the court grant no relief on the claim related to this request.

### 4. Mothmiller records.

{¶24} As discussed below, Mr. Dietz submitted a records request to the Department on November 9, 2024, and contends that the Department unreasonably delayed its response to that request. To investigate that delay, he made an additional request to the Prosecutor for records related to Emily Mothmiller's involvement in the response to the request. The Department produced one email chain, but Mr. Deitz claims that it failed to produce "communications, secretarial notes, or logs" explaining Ms. Mothmiller's role in the delay. The Prosecutor has denied that those records exist. *Requester's Evidence*, p. 6, Violation 8; *MTD*, p. 3

{¶25} Respondents did not support their denial with sworn testimony, so Mr. Deitz was only required to produce some evidence to sustain this claim. He has produced no evidence showing the existence of those records.

{¶26} I therefore recommend that the court grant no relief on the claim related to the request for records concerning Ms. Mothmiller's involvement in the response to Mr. Deitz's November 9 records request.

### 5. Amended complaint records.

{¶27} Mr. Dietz filed an amended complaint in the common pleas case. He made a records request to the Prosecutor for records related to the Prosecutor's internal processing of the amended complaint. The Prosecutor produced some records in response to this request, but Mr. Dietz claims that the Prosecutor failed to produce certain communications and logs. The Prosecutor denies the existence of those records. *Requester's Evidence*, p. 6, Violation 9; *MTD*, p. 3

{¶28} Respondents did not support their denial with sworn testimony, so Mr. Deitz was only required to produce some evidence to sustain this claim. He has produced no evidence showing the existence of those records.

{¶29} I therefore recommend that the court grant no relief on the claim related to the request for records concerning the Prosecutor's processing of Mr. Deitz's amended complaint.

**C. Delay Claims.**

{¶30} Mr. Deitz made a records request to the Department on November 9, 2024. The request was handled by the Prosecutor, and that office's notes indicate that it completed the response on December 10, 2024. Despite that, the records were not produced until December 18, 2024, when the Prosecutor informed Mr. Deitz that the records were available at the courthouse reception desk. Mr. Deitz was out of town then, but sent a representative to pick up the records on December 27, 2024. The representative was unable to do so because the Prosecutor had retrieved the records for safe keeping while the Prosecutor's office was closed during the week of the Christmas holiday. The records were made available on January 2, 2025, and were actually picked up on January 6, 2025. *Requester's Evidence*, pp. 20-29, 36.

{¶31} Mr. Deitz claims that the respondents violated R.C. 149.43(B)(1)'s mandate to produce records within a reasonable time in two distinct ways. The first is the delay between December 11 and 18, 2024. The second is by not making the records available between December 27 and January 2. *Requester's Evidence*, pp. 4, 5, Violations 2 and 3.

{¶32} Respondents violated R.C. 149.43(B)(1) by delaying production from December 11 to December 18. An office acts unreasonably when it does not produce records within the time that the evidence establishes it was able to in the normal course of its operations. *State ex rel. Wadd v. City of Cleveland*, 81 Ohio St.3d 50 (1998) held that an office violated R.C. 149.43(B)(1) by delaying production beyond the time when its own actions demonstrated it could have produced them. *Id*. at 53. The Prosecutor's internal notes indicate that it was able to produce the records Mr. Deitz requested a week earlier than it did, and it offers no explanation for that delay. See also *State ex rel. Clark-Shawnee Local School Dist. Bd. of Edn. v. City of Springfield*, 2024-Ohio-2483, ¶¶ 25, 26 (2d Dist.) (unexplained delay). I therefore recommend that the court find this unexplained delay violated R.C.149.43(B)(1).

{¶33} I do not, however, recommend that the court grant relief on the second delay Mr. Deitz alleges. Respondents fulfilled their duty to produce the records when they made them available on December 18. *Strothers v. Norton*, 2012-Ohio-1007, ¶¶ 8, 9, 13, 22; *Johns v. Allen*, 2013-Ohio-2045, ¶¶ 3, 11-14 (11th Dist.); *State ex rel. Darling v. Lake Cty*.,

2013-Ohio-1291, ¶¶ 21-23 (11th Dist.); *Evans v. Etna Twp*., 2024-Ohio-566, ¶¶ 12-13, adopted 2024-Ohio-816 (Ct. of Cl.).

{¶34} Finally, Mr. Dietz is not entitled to the damages he seeks. That relief is not available in cases brought under R.C. 2743.75. *Doe v. Ohio State Univ*., 2024-Ohio-5891, ¶¶ 42-55 (10th Dist.).

### D. Pattern of disregard for Public Records Act.

{¶35} Mr. Deitz's also alleges a generalized pattern of non-compliance with the Public Records Act. That claim seems to go beyond any of the specific public records requests at issue here. *Requester's Evidence*, pp. 6-7, Violation 9.

{¶36} This court lacks authority to grant relief on this claim. "Nothing in R.C. 2743.75 authorizes [this court] to grant relief beyond ordering the production of specific records in response to specific requests; the statute does not authorize . . . broader relief[.]" *Schaffer v. Sheets*, 2025-Ohio-1007, ¶ 33, adopted March 31, 2025 (Ct. of Cl, Case No. 2024-00808PQ). I therefore recommend that the court deny relief on this claim.

### E. Requester is entitled to recover his filing fee and costs; respondents should bear the balance of the costs.

{¶37} R.C. 2743.75(F)(3)(b) provides that the "aggrieved person shall be entitled to recover from the public office *** the amount of the filing fee *** and any other costs associated with the action[.]" Mr. Deitz was aggrieved by the respondents withholding the records they asserted were security records and by their delayed response to his November 9, 2025, records request. I therefore recommend that he recover his filing fee and the costs he incurred in this case. I also recommend that the respondents bear the balance of the costs of this case.

## III. Conclusion.

{¶38} Considering the foregoing, I recommend that the Court:
   A. Order respondents to produce unredacted copies of the records filed for in camera review.
   B. Find that respondents unreasonably delayed their response to requester's November 9, 2025, records request.

C.  Order respondents to reimburse requester for his filing fee and the other costs he incurred in connection with this case.

D.  Order respondents to pay the balance of the costs of this case.

E.  Deny all other relief.

{¶39} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

_____
TODD MARTI
Special Master

**Filed July 31, 2025**
**Sent to S.C. Reporter 8/14/25**